IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,              Case No. 3:06 CR 712

         v.                     O  R  D  E  R

DAVID GEISEN, et al.,

                      Defendant.

KATZ, J.

On August 21, 2007 and September 7, 2007, the Court conducted a *Daubert*[1] hearing to consider the testimony of several individuals proposed as experts by both the government and the Defendants.  Of significance to this discussion is the testimony of James A. Davis and Melvin S. Holmberg offered by the government.   Also before the Court is the request of the Defendants to exclude evidence relating to the cavity in the head of the reactor as being prejudicial and lacking relevance.

Pending before the Court are the objections of the Defendants and the response of the government.  Also before the Court is Defendant Siemaszko's motions to adopt the post-hearing memoranda of Defendants Geisen and Cook (Doc. Nos. 206 and 214), which this Court will grant. For the reasons that follow the objections of the Defendants are well taken in part and denied in part.

**DAUBERT STANDARD**

---

[1]

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

The legal standard to be used in *Daubert* challenges was set forth by Judge Bechtle in his

memorandum opinion issued on February 1, 2001:

> Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589).  The party offering the expert has the burden of proving admissibility.  *Daubert*, 509 U.S. at 592 n.10.  The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation.  *Id.* at 589-590.  Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry."  *Id.* at 591-92.
>
> In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue.  *Id*. at 592-93.  Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used.  *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).
>
> In *Daubert*, the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowledge.  These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community.  *Daubert*, 509 U.S. at 593-94.  These factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted."  *Heller*, 167 F.3d at 152.
>
> In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000).  In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue.  *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382b (5th Cir. 1996).
>
> Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury.  *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1987); *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740, 768 (D.Md. 1999) (quotation omitted), *aff'd*, No. 99-1540, 2000 WL 564010 (Fed. Cir. May 8, 2000); *Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998).
>
> Lastly, the court "should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595.  Federal Rule of Evidence 703 "provides that expert

2

opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id*. (quoting Fed. R. Evid. 703).  Under Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig.*, 35 F.3d [717,] 748 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985).

*In re: "Diet Drugs (Phenermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *5-6 (E.D. Pa. Feb. 1, 2001) (footnotes omitted).  The district court is not required to hold a hearing to address a *Daubert* issue.  *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

With this framework in place, the Court now turns to address each of the proposed witnesses *in seriatim*.

### JAMES A. DAVIS, PH.D

The Government has proposed Davis as an expert witness on its behalf.  Davis, a long-time employee of the Nuclear Regulatory Agency ("NRC"), proposes to testify as an independent witness and *not* on behalf of the NRC.  Subsequent to the *Daubert* hearing, the Defendants filed a memorandum opposing the use of Davis as an expert witness, as to which the government has filed a response and the Defendants a reply.   Among the many issues raised by the Defendants are the allegation that his testimony was generated solely for the purposes of this litigation and that he relied on the work of others in creating his opinions.

With respect to the former issue, this was before the Sixth Circuit in *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426 (6th Cir., Aug, 30, 2007).  In the opinion, the magistrate judge at the district court is quoted to have found," . . . The expert's opinions were conceived, executed

3

and invented solely in the context of this litigation."  The Court of Appeals addressed that issue

and articulated the following:

> If it is clear that a proposed expert's testimony flows naturally from his own current or prior research (or <u>field work</u>), then it may be appropriate for a trial judge to apply the *Daubert* factors in a somewhat more lenient fashion.

*Id.* at 435.  (Emphasis added.)  So it is here.

> The Advisory Notes to Fed. R. Evid. 702 also offer the following guidance:

> > Subpart (1) of Rule 702 calls for quantitative rather than qualitative analysis.  The amendment requires that expert testimony be based on sufficient underlying "facts or data."  The terms "data" is intended to encompass the reliable opinions of other experts. . .

> > The amendment makes clear that the sufficiency of the basis of an expert's testimony is to be decided under Rule 702.  Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion. . . However, the question whether the expert is relying on a *sufficient* basis of information or not– is governed by the requirements of Rule 702.

(2000 Amendments.) (Emphasis in original.)

Davis's long history with the NRC and his numerous assignments over the years related to

the issues upon which his proposed testimony centers clearly justifies this Court permitting him to

testify for the Government.  However, during the *Daubert* hearing he referred to the work and

opinions of others, with which he agreed, indicating the person creating the reports, documents or

opinions.  This Davis cannot do as it is a violation of the hearsay rules.  *See Mike's Train House,*

*Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006) and Fed. R. Civ. P. 801 (c).  Unless the

person responsible for those materials upon which Davis relies is available for cross-examination,

those materials are out-of-court declarations violative of the hearsay rule prohibitions of Fed. R.

Evid. 801 (c).  Davis will not be permitted to discuss the opinions of others and attempt to avoid

the hearsay objections by merely testifying that he agrees with those opinions.  However, exceptions to this hearsay prohibition include generally accepted industry standards.

While Davis is proposed by the government as an independent witness, not as an employee of the NRC, that distinction may be difficult for the jury to grasp.  Therefore, the Court will instruct the jury that Davis's testimony should be deemed independent of his employment by the Agency and that his opinions should not in any manner or fashion be deemed reflective of the NRC's position on the issues about which he testifies.  The parties are invited to submit suggested forms of additional special instructions with respect to this issue.

Many courts have distinguished between "whether an expert's testimony has been developed naturally and directly out of their own research, or whether the expert's testimony has been developed for the purposes of litigation."  *Id.* at 408, *citing  Daubert v. Merrill Dow Pharms, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

In stark contrast to the expert in *Mikes Train House, supra*, Davis has a wealth of background within the nuclear industry and significant familiarity (through service on the Augmented Inspection Team "AIT") with the issues at the Davis Besse facility, which issues are at the heart of this case.  It is for the foregoing reasons that the Court deems Davis's testimony is sufficiently reliable under the *Daubert* standards as subsequently addressed and expanded by multiple cases throughout the federal courts and relevant to the issues in the case. It bears repeating that Davis's testimony is limited insofar as he cannot testify as to the work/opinions of others unless those persons are made available for cross-examination.  Accordingly, the Defendants' objections are granted in part and denied in part.

**MELVIN S. HOLMBERG**

5

Melvin S. Holmberg is also employed by the NRC.   The government proposes the testimony of Mr. Holmberg, as an independent expert, for the purpose of assisting the jury in understanding the Davis-Besse inspection records.   As noted by the government, Defendants Geisen and Cook "do not take issue with Mr. Holmberg testifying to the trial jury about the layout and orientation of the head and nozzle penetrations, as that testimony would assist the jury in making sense of the evidence and reaching a determination regarding the crimes alleged in the indictment."  (Defs' Post-hearing Memo. at  p.2.)

Mr. Holmberg is a reactor inspector and there are no objections as to his qualifications by any of the Defendants on that front.  The Defendants objections are grounded in Mr. Holmberg's determination on whether a nozzle was deemed acceptable and, specifically, the basis or foundation for those opinions.

Mr. Holmberg's opinions, based on his scoring system of the nozzles, are dependent, in part, upon work of another NRC employee, James A. Gavula, also a reaction inspector.  However, Mr. Holmberg testified that he reviewed the same videotapes in making his assessment as to which nozzles were deemed acceptable, as well as considering the work of Mr. Gavula.  Had Mr. Holmberg not viewed the videotapes and made an independent assessment, his reliance upon Mr. Gavula's methodology would indeed render his conclusions insufficient under Rule 702.  Interestingly, Mr. Holmberg's conclusions on the number of acceptable nozzles was not identical to that of Mr. Gavula, lending credence to the issue of a quantitative analysis.  Indeed an analogy can be made that Mr. Holmberg's conclusions are no different from an opinion rendered by an accident reconstruction expert who views photographs taken by others from various angles.  Where conclusions are derived from an independent review, including similar work by another, it

6

is the interpretation of that review which can be presented to the trier of fact for the ultimate

determination.   Again, Rule 702's Advisory Notes provide useful guidance:

> A review of the caselaw after *Daubert* shows the rejection of expert testimony is
> the exception rather than the rule.  *Daubert* did not work a "seachange over federal
> evidence law," and "the trial court's role as a gatekeeper is not intended to serve as
> a replacement for the adversary system. *United States v. 14.38 Acres of Land
> Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996).  As the
> Court in *Daubert* states: "Vigorous cross-examination, presentation of contrary
> evidence, and careful instruction on the burden of proof are the traditional and
> appropriate means of attacking shaky but admissible evidence."  509 U.S. at 595.

(*Id.*)

For the reasons stated above, pursuant to Fed. R. Evid. 702, Mr. Holmberg will be

permitted to testify at trial as to facts and opinions derived from his independent investigation, his

relevant experience in the field and review of records pertinent to that case.

## EVIDENCE REGARDING CAVITY

At the hearing, counsel for Defendants presented oral argument on the admissibility of

evidence regarding the cavity in the reactor head.  The government offered an oral response

thereto.

The argument premised by the Defendants is that the testimony relating to the cavity is

immaterial to the case as the charges are based upon allegedly false statements.  Assuming

conditional relevancy, the Defendants argue this evidence should be excluded under Fed. R. Evid.

403[2] as its probative value is substantially outweighed by the danger of unfair prejudice, confusion

of the issues, misleading the jury via an implied claim of danger, undue delay and constitutes the

---

[2]

  Although relevant, evidence may be excluded if its probative value is substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

presentation of collateral evidence.   For its part, the government submits that the status of the

reactor head and/or presence of the cavity support the alleged falsity of the Defendants'

statements.      As noted by the Sixth Circuit:

> [u]nfair prejudice, as used in Rule 403, does *not* mean the damage to a defendant's
> case that results from the legitimate probative force of the evidence; rather, it refers
> to the evidence which tends to suggest a decision on an improper basis.  *United
> States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) (quotation omitted) (noting that
> examples of improper bases included jury hostility or jury sympathy).

*United States v. Scott*, 69 Fed. Appx. 317, 323 (6th Cir. 2002).  (Emphasis in original.)   In

assessing the relevant factors in making a Rule 403 determination, the district court is vested with

broad discretion.  *United States v. Franco*, 484 F.3d 347, 349 (6th Cir. 2007), *citing United States

v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006).  *See also, United States v. Hart*, 70 F.3d 854, (6th

Cir. 1995), *cert. denied*, 517 U.S. 1127 (1996).

Where the determination is a close call, most courts have held that the "balance of Rule

403 weighing should be struck in favor of admission."  *Sheesley v. Cessna Aircraft Co.*, 2006 WL

3042793 (S.D. Fla. 2006), *quoting Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th

Cir. 2006).  *See also Henderson v. George Washington University*, 449 F.3d 127, 133 (D.C. Cir.

2006) ("'Rule 403 tilts, as do the rules as a whole, toward of the admission in close cases.'")

(quotation omitted); *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343-1344 (3rd Cir. 2002)

(noting a strong presumption of relevant evidence to be admitted and only excluded where it is

"substantially outweighed" by the problems in its admission); *Soll v. Provident Life & Acc. Ins.

Co.*, 2002 WL 1461891 *6 (E.D. La 2002) (noting the Fifth Circuit's observation that Rule 403 is

to be used sparingly and is meant to relax the iron rule of relevance not to "even out" the weight of

the evidence) *citing United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993), *cert. denied*, 511

U.S 1149 (1994).   Moreover, the probative worth of evidence is impacted by the existence or

availability of other evidence on the same issue.  *See Old Chief v. United States*, 519 U.S. 172,

185 (1997).

> In this case, the Indictment at paragraph 11, states in pertinent part:

> The scheme involved making false and misleading statements and concealing
> material information about both the quality of the past reactor vessel head
> inspections and the *condition of the reactor vessel head*. . .

(Emphasis added.)   Count 1 of the Indictment charges the Defendants:

> did knowingly and willfully conceal and cover up, and cause to be concealed and
> covered up, by tricks, schemes and devices, material facts within the jurisdiction of
> the executive branch of the government of the United States, to wit, the *condition
> of Davis-Besse's reactor vessel head*, and the nature and findings of the previous
> inspections of the reactor vessel head.

(Emphasis added.)

The initial question of relevance for this Court is answered in the affirmative, namely, the

evidence does relate to the charges in this case.  The indictment charges the defendants with

making "false and misleading statements and concealing material information about the quality of

past reactor vessel head inspections and the condition of the reactor vessel head . . ."

Testimony/evidence demonstrating the status of the reactor head and the existence of a cavity

clearly relates to the issue of the alleged falsity of the statements/representations of the defendants

as contained in the indictment.   Therefore, an apparent connection between  the status of the

reactor head and the existence or non-existence of a cavity and  the alleged

statements/representations by the Defendants supports a determination of relevancy with regard to

this evidence.

The more difficult question is whether the probative value is substantially outweighed by

unfair prejudice, confusion of the issue, undue delay, etc.  In this Court's view, the prejudicial effect of this evidence is tempered by the ability both to cross-examine the government's witnesses on this issue and of the Defendants to offer their own expert witnesses to present a contrary view.  It would also appear this evidence cannot be offered through another means which raises the probative value thereof.  The analysis then contemplates whether confusion of the issues, delay or needless presentation of cumulative evidence are sufficient to substantially outweigh the probative value.  Although admittedly a close call, the Court finds that these factors are remedied by the limitations on government's experts, as noted above.  Additionally, the role of defense counsel should not be diminished as noted by the district court in *Soll, supra*:

> [T]here is a place in the courtroom where the skill and acumen of professional trial lawyers should be brought to bear.  Indeed the motion practice presaging the subject jury trial admits that the trial lawyers in this case are keenly aware of the points of contest, and quite capable of fairly evening-out inaccuracy or exaggeration, such that it more closely comports with the truth.

Regarding confusion of the issues, the Court's role, with the input of counsel, is to fashion jury instructions reflective of the applicable law.  To be clear, the Defendants are charged with false statements which charges take into account what they knew or did not know, inspect or did not inspect relative to the reactor head.  The presence or absence of the cavity is relevant to that inquiry; further, the jury will be charged with ascertaining whether the *statements* made by the Defendants were false or misleading.

Accordingly, the evidence regarding the existence of the cavity is admissible.

## CONCLUSION

Based upon the aforementioned reasons, Defendant Siemaszko's motions to adopt the post-hearing briefs of the other Defendants (Doc. Nos. 206 and 214) are granted.  Dr. James A.

Davis is permitted to testify, but his testimony is limited insofar as he cannot testify as to the

work/opinions of others unless those persons are made available for cross-examination.  Mr.

Melvin Holmberg will also be permitted to testify.  Finally, the evidence regarding the existence

of the cavity is admissible subject to the limitations placed on the above- referenced experts.

IT IS SO ORDERED.

   S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE
